UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14162-CIV-GRAHAM/LYNCH

VERO TECHNICAL SUPPORT, INC.,

   Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE, et al.,

   Defendants.
_____/



## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS(DE 15) AS WELL AS ON PLAINTIFF'S APPLICATIONS FOR TEMPORARY RESTRAINING ORDER (DE 25) AND FOR PRELIMINARY INJUNCTION (DE 3)

**THIS CAUSE** comes before this Court upon Orders of Reference (DE 7 & 27) and the above Motions. Having reviewed the Motions, their respective Responses and Replies, and the various exhibits attached to them, this Court recommends as follows:

### BACKGROUND

1.  George Sigler has a long history of contract work in different capacities with the U.S. Government. This includes work done by the Plaintiff, Vero Technical Support, Inc., a company that Mr. Sigler started in 1991. Indeed Mr. Sigler attests in his Affidavit to having "special expertise in formulating bids and proposals for government contracts, and in performing the mathematical calculations necessary for those tasks." The Defendant awarded the Plaintiff a contract to provide weather-related services at various U.S. Army sites. Through the instant

Complaint, the Plaintiff challenges the decision by the Defendant, the U.S. Department of Defense, to insource those services rather than to continue to rely on outside contractors. The Plaintiff also seeks preliminary injunctive relief to maintain the status quo.

2. 2008 saw a complete change in policy regarding the Government's use of outside contractors. As authors Major Kevin P. Stiens and Lieutenant Colonel (ret.) Susan L. Turley detail in their article, <u>Uncontracting: The Move Back to Performing In-House</u>, 65 Air Force Law Review 145 (2010), experience had revealed many inherent problems and significant costs with outsourcing. To remedy these problems, the 2008 National Defense Authorization Act, found at 10 U.S.C. § 2463, required the Dept. of Defense, the Defendant, to begin considering use of its own resources to meet its needs. The first Dept. of Defense Guideline promulgated thereunder was issued on April 4, 2008.

3. It was shortly thereafter, on April 21, 2008, when the Defendant issued the Performance Work Statement describing the weather services that became subject of the parties' contract. As Mr. Sigler recalls in his Affidavit, the Plaintiff bid for that contract, lost the bid, and protested its award to a third party on three successive occasions. Mr. Sigler believes that the Defendant took advantage of the resulting delays to give it time to plan for the job's eventual insourcing.

4. A second insourcing guideline was promulgated on September 2, 2009, and in January 2010, two more guidelines were promulgated. These guidelines set forth the complicated framework for comparing the cost of outsourced services against the cost of in-house services. The guidelines also give instructions for how to consider certain cost factors. For example the cost of employee benefits are to be imputed on outside contractors, whether or not they pay them, in order to eliminate that cost advantage.

5. On September 11, 2009 the Defendant issued a new Solicitation for bids on the subject weather services. The memorandum amended the Solicitation in light of the new preference towards insourcing, and it shortened the performance time from September 30, 2013 to June 2010, with the option of renewing the contract at one-month intervals through September 30, 2010. The contract was opened to re-bidding in light of the changes, and the Plaintiff was awarded the contract. The contract took effect March 2010 with performance to begin that April.

6. Almost immediately, despite the contract, the Defendant began its conversion to insourcing. On April 8, 2010 the Defendant hired one of the Plaintiff's employees to manage a site. That next day, on April 9, the Plaintiff submitted a FOIA request regarding the insourcing decision on the contract. The Defendant answered by producing a cost study analysis, apparently

conducted in September 2009 around the time of the Solicitation amendment. On May 17, 2010 the Plaintiff executed a Modification of Contract, converting one position to civil service, presumably to account for the April 8th employee conversion. On June 8, 2010, with the contract set to expire at the end of the month, the Plaintiff filed the instant lawsuit.

7. The Defendant exercised two one-month renewal options, extending the contract through the end of this August. (The contract was not renewed for one particular location, however. The Ft. Sill site already had been fully converted, and this conversion presumably was subject of the second Modification of Contract, executed July 23.) These renewals are subject of the pending Application for Temporary Restraining Order. The Defendant announced the renewals in conjunction with its request to continue the preliminary injunction hearing with the implication being that they would maintain the status quo. The Plaintiff objects to the continued insourcing conversion process which it maintains violates the status quo.

8. The Defendant also has announced that it is preparing a new insourcing analysis, one based on the data that the Plaintiff proposes. By preparing the new analysis, the Plaintiff emphasizes, the Defendant implicitly concedes that its prior insourcing decision, the subject of the Complaint, was erroneous, and the Plaintiff seeks immediate injunctive relief on that

basis. On the other hand, the analysis revision renders the Plaintiff's Complaint moot, at least in a practical sense. It in effect grants the relief the Plaintiff is seeking: remand for a proper insourcing determination that complies with 10 U.S.C. § 2463 and the guidelines promulgated thereunder. As the Plaintiff emphasizes at ¶7 of its Response in opposition to the Motion to Dismiss, "Defendants will have the right to remand, as every other agency does in APA cases, to revisit and reaffirm their insourcing decision so that it passes muster under the APA's 'arbitrary and capricious' standard of review." However this development may not render the Complaint moot in the sense that the Plaintiff is seeking "a post-judgment remand", as it states in footnote 5 to its Reply in support of its Application for Temporary Restraining Order.

9. The Plaintiff carefully defines its cause of action, limiting it to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. The Plaintiff does so in order to invoke this Court's federal subject matter jurisdiction. The Plaintiff alleges that the Defendant's "insourcing decision, and whatever findings and conclusions are alleged to support it, are agency actions that are 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law.'" The Plaintiff alleges that the insourcing analysis does not comply with the governing regulations and procedures in the following ways: The Defendant

failed to account for the cost of benefits or the cost of government vehicles. The Defendant misclassified the personnel needed. Lastly there is a gross disparity between the Defendant's estimated cost of contractor performance and the actual cost claimed by the Plaintiff (and other bidders). There also is a disparity between the Defendant's estimate of the cost of doing the work, itself, and what the Plaintiff is charging.

10. There appears to be no dispute that the APA governs the Plaintiff's claim. Rather the dispute concerns which court has jurisdiction to hear the APA claim. Both in the Complaint, itself, and now in Response to the Motion to Dismiss, the Plaintiff argues vigorously that this Court has subject matter jurisdiction. The Defendant disagrees and contends that it is the U.S. Court of Federal Claims ("COFC") that has jurisdiction over the claim and that the COFC's jurisdiction is exclusive. The Plaintiff also seeks injunctive relief, but the jurisdictional question must be answered first.

## DISCUSSION

The Defendant moves to dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Because the Defendant's arguments take the form of a "facial attack" on jurisdiction, this Court must accept the Plaintiff's allegations as true and afford it the safeguards provided under Rule 12(b)(6). See Morrison v. Amway Corp., 323 F.3d 920, 925, n.5

(11th Cir. 2003), Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). The Plaintiff nevertheless carries the burden of demonstrating the presence of jurisdiction. See Rosner v. U.S., 231 F.Supp.2d 1202, 1205 (S.D. Fla. 2002).

There was a time when federal district courts had APA jurisdiction to hear contract award challenges and violations of government contract law. The Administrative Dispute Resolution Act ("ADRA") ended this shared jurisdictional arrangement, often called Scanwell jurisdiction, in 1996. See Labat-Anderson, Inc. v. U.S., 346 F.Supp.2d 145 (D.D.C. 2004). The Tucker Act, 28 U.S.C. § 1491(b)(1), as amended by the ADRA, consolidated the COFC's jurisdiction, allowing it:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract.

The jurisdictional grant, as broad as it is, does not end there. The statute continues by giving the COFC jurisdiction over the full range of procurement disputes. As such the COFC also hears:

> any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

The statute initially had allowed the COFC and the federal district courts to share jurisdiction over government contract and procurement disputes. However, by virtue of a sunset provision, the statute now vests exclusive jurisdiction with the COFC. Thus it is the Defendant's argument that only the COFC may

hear the Plaintiff's challenge to the Defendant's decision no longer to use an outside contractor to provide the weather services.

The Plaintiff vigorously denies that its Complaint falls within the scope of § 1491(b)(1). First it maintains that the dispute over insourcing is not procurement-related. Insourcing, the Plaintiff reasons, is the opposite of procurement. That is, it is the act of providing goods and services for oneself and not from outside providers. Moreover the disputed decision to insource has no direct affect on the existing contract. The Plaintiff points to the Labat-Anderson case to help illustrate the distinction it is trying to make. The Labat-Anderson case involved a dispute over the Dept. of Defense's decision not to renew an existing contract and instead to insource the service while it sought a new contract. The plaintiff alleged that the Dept. of Defense improperly had switched to insourcing without following the regulations regarding bid solicitations or cost comparison studies. The district court held that the COFC has jurisdiction over the dispute, which the COFC, itself, subsequently confirmed in Labat-Anderson, Inc. v. U.S., 65 Fed.Cl. 570 (2005). Owing to its strong similarity to the present case (although the case does predate the general policy shift towards insourcing), the Defendant relies heavily upon Labat-Anderson to support dismissal. The Plaintiff highlights the fact

that the insourcing decision in Labat-Anderson was simply a temporary measure with an eye toward future bid solicitations, whereas the instant case involves no such ongoing contract activity. The Plaintiff's argument is well-taken, but ultimately § 1491(b)(1)'s language is broad enough to encompass this situation. Indeed the COFC has heard insourcing disputes in other situations. See, e.g., Space Mark, Inc. v. U.S., 45 Fed.Cl. 267 (1999) (hearing a challenge to an Air Force decision that insourcing a job was more cost-effective that hiring an outside contractor).

As the Plaintiff emphasizes, the words "procurement" or "procure" signify the act of obtaining or acquiring goods or services. See Resource Conservation Group, LLC v. U.S., 597 F.3d 1238, 1244 (Fed. Cir. 2010) (also citing the earlier case of Distributed Solutions, Inc. v. U.S., 539 F.3d 1340 (Fed. Cir. 2008) on which the Plaintiff relies). Insourcing therefore does not involve the procurement of an outsider goods or services provider. However it is the Defendant's decision not to procure something, not the act of insourcing, itself, that is at issue here, and that decision of whether or not to procure something is still procurement-related. When viewed this way, the Plaintiff's Complaint neatly tracks the ADRA's jurisdictional language: an allegation of "a violation of statute or regulation" (here, 10 U.S.C. § 2463 and the regulations and guidelines promulgated

thereunder) that has a "connection with a procurement or a proposed procurement" (here, whether to keep using an outsider contractor or to insource).

That is not the end of the matter. Federal statute defines "procurement" to include "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." Resource Conservation, 597 F.3d at 1244 (citing 41 U.S.C. § 403(2)). This definition is broad enough to include the decision of whether or not to procure, either as a matter of determining the need for procurement or deciding whether to continue a procurement arrangement. The Resource Conservation case, itself, helps to illustrate the point. Resource Conservation was a challenge to the Government's decision to lease land that it already owned to a private party. This lease situation, the Court held, is not procurement-related. It also is a situation fundamentally different from the one presented here. The case here concerns the Government's decision whether an outside party (the Plaintiff) can provide weather service more cost-effectively than it can provide that service for itself — that is, whether or not to procure.

It should be noted, moreover, that the Plaintiff cites no on point case law expressly holding that a dispute over these new insourcing regulations, whether alleging their violation or

seeking their enforcement, can be heard by a district court. To the contrary, because the regulations at issue do bear some "connection with" procurement, it seems that a dispute over them would come within the Tucker Act's scope. The Plaintiff does mention that the case of Rohmann Servs., Inc. v. Dept. of Defense, Case No. 10-CV-0061 (W.D.Tex. 2010) (unreported) which it says involved an insourcing decision under the same regulations at issue here. Although that case was brought in district court, it is unpersuasive. The Defendant revoked its own insourcing decision before that Court even heard the plaintiff's preliminary injunction application. It appears therefore that Rohmann yielded no rulings helpful to answering this jurisdictional question.

The policy behind the ADRA amendment and the creation of exclusive COFC jurisdiction lends further support to this Court's finding. The ADRA meant to end Scanwell jurisdiction whereby district courts heard challenges to contract awards and violations of government contract law. The ADRA, through its expansive language, endeavored to create in the COFC a place of uniform jurisdiction over all manner of bid protest, contract award, and procurement-related disputes. See Am. Fed'n of Gov't Employees v. U.S., 258 F.3d 1295, 1300 (Fed. Cir. 2001), Labat-Anderson, 346 F.Supp.2d at 149-150. Transferring the Plaintiff's Complaint to the COFC furthers the statute's goal of maintaining

such uniformity. This uniformity, in turn, creates a forum (in the COFC) that has expertise in the government contracting process. See Info. Sys. & Networks Corp. v. U.S., 970 F.Supp. 1, 6 (D.D.C. 1997). Allowing plaintiffs to plead around jurisdiction restrictions does not give effect to the arrangement that Congress intended. Cf. B&B Trucking, Inc. v. U.S. Postal Serv., 406 F.3d 766, 772 (6th Cir. 2005) (discussing the Contract Disputes Act which vests exclusive jurisdiction over contract-related claims with the COFC).

Related to the parties' jurisdictional dispute is the question of whether the Plaintiff has standing to bring its APA claim before the COFC. The Plaintiff argues that it is not an "interested party" as required by the Tucker Act. Both Weeks Marine, Inc. v. U.S., 575 F.3d 1352, 1359 (Fed. Cir. 2009), on which the Defendant relies, and Am. Fed'n of Gov't Employees v. U.S., 258 F.3d 1295 (Fed. Cir. 2001), on which the Plaintiff relies, define "interested party" in terms of the Act's bid protest jurisdiction. Those cases limit standing to "disappointed bidders"; that is, "to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." AFGE, 258 F.3d at 1302. Employing the language of these definitions, the Plaintiff maintains that it is not a bidder or offeror, no contract is involved, and there is no guarantee that it will even

be awarded a new contract should it prevail on its claim.

The Plaintiff's description of itself is inaccurate. Contrary to its argument, it indeed is a bidder or offeror in the sense that it is an entity that has a contract to provide the service in question. It has a direct economic interest in maintaining that contract, which presumably is the ultimate goal of its challenge to the insourcing decision. Cf. Roxco, Ltd. v. U.S., 1999 WL 160608, *2 (Fed. Cir. 1999) (finding plaintiff to be an "interested party" "because of the possibility that the second solicitation [the object of the plaintiff's claim] will determine who ultimately obtains a valid contract"). It is true that the AFGE Court found no COFC bid protest standing in a case, such as the present one, that essentially involved an insourcing dispute. AFGE is not fully on point, however. The AFGE plaintiffs were federal employees who challenged their displacement from a defense agency's decision to outsource the job; the Plaintiff here is the outside provider.

The Plaintiff raises another standing issue. It is concerned that once the lawsuit is brought before the COFC, the Defendant will change tack and argue that it lacks standing. Standing under the ADRA for COFC purposes is, after all, narrower than standing to bring an APA claim in district court. This concern is allayed by the fact that in both its Motion to Dismiss and its Reply in support thereof, the Defendant argues that the Plaintiff does has

COFC standing. The affirmative position that the Defendant takes here should collaterally estop it from taking the opposition position before the COFC.

Consequently this Court finds that the Plaintiff's challenge to the Defendant's insourcing decision falls within the broad scope of the ADRA amendment to the Tucker Act, and pursuant to that statute, § 1491(b)(1), only the COFC has jurisdiction to hear the dispute. The Defendant raises an alternative basis for the COFC's exercise of exclusive jurisdiction over the Complaint: the Contract Dispute Act, ("CDA"), 41 U.S.C. § 609(a)(1). Under the CDA the COFC has exclusive jurisdiction over any dispute relating to a contract between an executive agency and an independent contractor or any such claim that is "essentially contractual" in nature. See B&B Trucking, Inc., 406 F.3d at 768. See also, 28 U.S.C. § 1346(a)(2).

The Plaintiff squarely denies that it is bringing a contract or contract-related claim, although whether the Plaintiff is correct is not readily apparent. On one hand it would seem that the claim is not contractual since the Plaintiff focuses on an alleged violation of procurement regulations. In this event the claim falls under the COFC's "bid protest" jurisdiction as discussed above in reference to § 1491(b)(1) of the Tucker Act. On the other hand claims concerning a contract's termination, which at least facially is involved here, are contractual. See

<u>Griffy's Landscape Maintenance LLC v. U.S.</u>, 51 Fed.Cl. 667 (2001) (explaining the difference between bid protest jurisdiction and CDA jurisdiction). <u>See</u> <u>also</u>, <u>B&B Trucking</u> and <u>Roxco</u>, <u>supra</u>. Moreover the amended Solicitation does at least reference insourcing initiative policies and plans such as RMD 802, thereby suggesting that the governing regulations were incorporated into the contract as a term. This might support a finding that the Plaintiff's regulatory dispute is "essentially contractual" in nature.

In the case of <u>SRS Tech. v. U.S.</u>, 843 F.Supp. 740 (D.D.C. 1994), a district court found a contract-related claim to fall outside the CDA's scope because it concerned an alleged violation of the governing regulations, but the court also exercised its APA jurisdiction to hear that dispute. The case therefore lends support to the Plaintiff's position. However this single case is unpersuasive. For one the exact same court reached a different result on similar facts in the subsequently decided <u>Info. Systems</u> case, cited <u>supra</u>. Secondly <u>SRS Tech.</u> concerned a decision by the Small Business Administration over the plaintiff's "Small Disadvantaged Business" status, hence not a bid protest or procurement-related matter, at least directly.

In any event this Court need not decide whether the Plaintiff's Complaint falls under the bid protest/procurement jurisdiction of the Tucker Act or under the contract-related

jurisdiction of the CDA. In either event the COFC enjoys exclusive jurisdiction. It should be left to the COFC, the court that has jurisdiction over this Complaint, to decide whether the Plaintiff's claim invokes Tucker Act or CDA jurisdiction. Likewise other facets of the parties' dispute should be left to the COFC, the court with jurisdiction, to decide. This includes whether the Plaintiff's bid on the amended Solicitation and subsequent acceptance of that contract award waived all objections to either the bidding irregularities that preceded the Solicitation's amendment or to the insourcing decision, itself, which appears to pre-date the Solicitation's amendment. This also includes whether the Plaintiff's claim for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 should be dismissed.

## CONCLUSION

In its attempt to secure district court APA jurisdiction, the Plaintiff limits its claim to just the Defendant's insourcing decision. The Plaintiff maintains that its claim is neither a procurement protest by an interested party (for Tucker Act purposes) or a breach of contract (for CDA purposes). In trying to avoid COFC jurisdiction by defining away its claim for relief, the Plaintiff effectively eviscerates the claim. The Defendant's insourcing decision cannot be considered in isolation, ignoring both the procurement context in which it was reached or the

Plaintiff's interest in maintaining the contract. Moreover the purpose behind these jurisdictional restrictions — the creation of one forum for resolving procurement and contract disputes — would not be served by keeping the Complaint here.

**ACCORDINGLY**, this Court recommends that the Defendant's Motion to Dismiss be **GRANTED**. Because this Court lacks subject matter jurisdiction over the Plaintiff's Complaint, this Court recommends further that the Plaintiff's Applications for Temporary Restraining Order and Preliminary Injunction be **DENIED** without prejudice.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 4th day of August, 2010.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Donald L. Graham
 Paul R. Berg, Esq.
 Anthony Pogorzelski, AUSA